UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

————————————————————X

ANDREW BARATI                                  :          CIVIL ACTION

    Plaintiff                                      :          NO. 3:10cv01756-JBA

VS.                                            :

METRO-NORTH RAILROAD COMPANY,       :

    Defendant                                      :          APRIL 3, 2012
————————————————————X

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF
## MOTION FOR ATTORNEY FEES AND COSTS

The Federal Rail Safety Act is a federal fee-shifting statute mandating that a prevailing employee "shall be entitled to all relief necessary to make the employee whole . . . including litigation costs, expert witness fees, and reasonable attorney fees." 49 U.S.C. 20109(e).  Here, the plaintiff Andy Barati is a prevailing employee under the FRSA, and entitled to an award of costs and fees. Judgment Doc. No. 129.

The starting point for any attorney fee award analysis in this District is the Second Circuit's recent decision in *Millea v. Metro North Railroad Co.*, 658 F.3d 154 (2d Cir 2011).  The Second Circuit confirms that the analysis must begin with the lodestar: "Both this Court and the Supreme Court have held that the lodestar--the product of a reasonable hourly rate and the reasonable number of hours required by the case-- creates a 'presumptively reasonable fee,' *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); *see also Perdue v. Kenny A. ex rel. Winn*, 130 S.Ct. 1662, 1673 (2010)." *Millea, supra*, at 166.

**Lodestar Analysis**

In *Perdue*, the United States Supreme Court examined the interpretation and calculation of attorneys' fees under "federal fee-shifting statutes" that calculate awards using the "lodestar" method. *Perdue v. Kenny A*, 130 S. Ct. 1662 (2010). In *Perdue*, the Supreme Court noted the similarity of all fee-shifting statutes, and laid out the "important rules" for calculating a "reasonable" fee under them. *Id.* at 1671 n.3, 1672-73. Specifically:

\* A "reasonable fee" must be sufficient to "induce a capable attorney to undertake the representation of a meritorious" case. *Id.* at 1672;

\* The "lodestar" method for determining a fee is "presumptively sufficient to achieve this objective," as a properly calculated lodestar includes "most, if not all, of the relevant factors constituting a 'reasonable attorneys fee.'" *Id.* at 1673;

\* The relevant factors for calculating the lodestar include, but are not limited to: the novelty and complexity of the litigation, the skill and experience of the attorney, the overall quality of the representation, and the understanding that payment of fees will generally not come until the end of the case, if at all. *Id.* at 1673, 1675.

\* A lodestar-based fee can be "enhanced" in "exceptional" circumstances that the lodestar "did not adequately take into account." *Id.* at 1669, 1673.

The Supreme Court made it clear that these rules applied generally to "federal fee shifting statutes," like the FRSA, that are "based on the 'lodestar,' *i.e.*, the number of hours worked multiplied by the prevailing hourly rates...." *Perdue*, 130 S.Ct. at 1669, 1671 n.3 (noting that many federal fee-shifting statutes use "virtually identical

language").

**The work performed and time expended are reasonable**

A review of the day-to-day time expended on this case set forth in the lists attached to counsel's Affidavits demonstrate the time spent was both reasonable and necessary to fully protect complainant's interests.[1] After OSHA issued its Finding in the Barati case (and three other Metro North FRSA cases) in June 2009, Metro North objected and all four cases proceeded to the administrative law judge level. All four Metro North cases then were consolidated before ALJ Geraghty, and the United States Department of Labor filed an appearance in all four cases. Discovery and motion practice on common issues applicable to the consolidated cases proceeded, and one fourth of that time now is being allocated to the Barati case (see attached list of time spent on the consolidated cases).

The record in this case shows that each of the pleadings filed was necessary, and no action was taken that was not fully reasonable, including the time spent preparing this fee petition. *Fabi Const. Co., Inc. v. Secretary of Labor*, 541 F.3d 407, 414 (D.C. Cir. 2008). Billing for travel time has been reduced by half.

**The results obtained justify a fee award at the highest market rates**

In affirming an award of attorneys' fees far beyond the damages awarded, the Sixth Circuit stated that "the value of rights vindicated goes beyond the actual monetary award, and the amount of the actual award is not controlling." *McHenry v. Chadwick*,

---

[1] The attached documentation properly sets forth the date and duration of time necessary to complete each of the activities listed in the petition. *Hensley v. Eckerhart,* 461 U.S. 424 at 437 n. 12 (1983) ("plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures.")

896 F.2d 184, 189 (6th Cir. 1990).   This principal was recently and emphatically confirmed by the Second Circuit when discussing the award of attorney fees under federal fee-shifting statutes such as the FRSA:

> By enacting a fee-shifting provision for FMLA claims Congress has already made the policy determination that FMLA claims serve an important public purpose disproportionate to their cash value. . . . Especially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statues: assuring that civil rights claims of modest cash value can attract competent counsel.  The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery.

*Millea v. Metro North Railroad Co.,* 658 F.3d 154, 167 and 169 (2d Cir. 2011).   Thus, a FRSA fee award should reflect the value Congress places on assuring that railroad employee whistleblowers receive legal representation to enforce their rights.

That said, it also is a truism that "the most critical factor in determining a fee award's reasonableness is the degree of success obtained. . . ." *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 569 (1992).   Here, there is no question Mr. Barati achieved complete success in enforcing his rights under the FRSA.   Indeed, this was the first federal jury trial in the nation under the recently enacted FRSA.   It was a case of first impression with no FRSA precedents to guide the litigation or to ensure success.   The fact the plaintiff won a full measure of his economic and emotional distress damages, plus a punitive damages award four times the statutory maximum, justifies a fee award at the highest possible rate.

**The rates requested by complainant are reasonable**

The amount of attorney fees properly awarded is determined by reference to the prevailing market rates.   *Riverside v. Rivera*, 477 U.S. 561 (1986); *Millea, supra*.

Evidence of the reasonability of a particular hourly rate comes from the customary rates charged by attorneys with commensurate skill and experience for similar cases in the relevant community. *Perdue*, 130 S. Ct. at 1672.

Along with the undersigned counsel's Affidavits, the Affidavits of Attorneys Garrison, Rosen, and Richardson attached to this Memorandum confirm the rates requested are in line with those prevailing in the community for similar services by lawyers of comparable experience, skill, and reputation.

### The *Johnson* factors also support the requested rate

For the lodestar analysis factors previously recognized by the Second Circuit, *see Arbor Hill Concerned Citizens Neighborhood Assoc. et al v. County of Albany et al*, 522 F.3d 182, 190 (2d Cir. 2007), listing the twelve factors in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974). In *Perdue*, the Supreme Court rejected the exclusive use of the twelve *Johnson* factors, noting they "gave very little actual guidance." *Perdue, supra*, at 1672. Nevertheless, an application of those twelve factors also strongly supports awarding the fee rates requests by the plaintiff:

1.      The time and labor involved:   The contemporaneous time records attached to plaintiff counsel's Affidavits fully support the time expended and labor involved in this matter.

2.      The novelty and difficulty of the questions:  This matter involved a untested federal statute and raised unprecedented issues concerning its interpretation and application.  The novelty of the subject matter, combined with the lack of any precedent, created exceptional challenges during the pretrial and trial phases of this case.  As such, the prosecution of this case involved a constant stream of close

judgment calls.

3. <u>The skill requisite to perform the legal service properly</u>: The enforcement of whistleblower rights is not a common or familiar area, even for attorneys who handle employment law matters. To effectively represent the plaintiff, an attorney needed to be familiar with the sub-culture that is the railroad industry and adept in the presentation of a complicated case to a federal jury. The skill and experience of plaintiff's counsel is set out in their attached Affidavits, and is supported by the Affidavits of Mr. Garrison, Mr. Rosen, Mr. Renner, and Mr. Richardson, as well as by the outcome in this case.

4. <u>The preclusion of other employment by the attorney due to acceptance of the case</u>: At the time counsel agreed to represent Mr. Barati, it was clear this case would raise difficult issues and be time consuming. The significant amount of time counsel has spent on this matter over nearly four years precluded counsel from accepting other cases.

5. <u>The customary fee</u>: The undersigned's customary fee is $550 per hour, and is well within the parameters of the relevant market rates applicable to this matter. Similarly, Attorney Perry's fee is $375 per hour. Unless such fee awards are granted, the courts will create a strong economic disincentive for attorneys to enforce the whistleblower rights of railroad workers. *See Millea, supra.*

6. <u>Whether the fee is fixed or contingent</u>: The plaintiff in this matter could not afford to pay an hourly attorney fee. Counsel could not have known the outcome of this case at the time a decision had to be made about whether or not to accept this case. The delay in payment and the risks taken by counsel justify an hourly rate at the high end of the market rates.

7.    <u>The time limitations imposed by the client or the circumstances</u>:   The undersigned commenced processing of this case expeditiously and met all time requirements for the filing of pleadings and the trial of the case.

8.    <u>The amount involved and the results obtained</u>:   In order to obtain any damages for the plaintiff, undersigned had to carry the burden of proof under the "contributing factor" standard and also disprove the Railroad's "clear and convincing" defense.   Undersigned did so, and proved every element of damages available under the FRSA.   The jury awarded Mr. Barati his full damages for emotional distress and economic loss.   Moreover, the jury awarded $1 million in punitive damages, four times the statutory maximum.

9.    <u>The experience, reputation and ability of the attorney</u>:   For the reasons set forth in counsel's Affidavits and the Affidavits of Attorneys Garrison, Rosen, Renner, and Richardson, this factor supports the fees requested.   The result in this case is the product of counsel's experience in the railroad industry, experience in conducting federal discovery, ability to conduct an effective federal court jury trial, and expertise in a novel untested federal statute.

10.    <u>The "undesirability" of the case</u>:   This case would not be desirable to general practitioners.   It was evident from the start that counsel would have to devote considerable time and resources to this contested case, and would not receive any compensation at all until after prevailing.   Given the resources available to the Railroad to defend its actions and the unique nature of a railroad whistleblower case, this was an "undesirable" case.

11.    <u>The nature and length of the professional relationship with the client</u>:   This

factor is not relevant to whistleblower cases.

12.   <u>Awards in similar cases</u>:  As this is the first FRSA jury trial in the nation, there are no similar cases.  The purpose of the fee-shifting statute is to promote the public good by ensuring that the rates recovered by a successful litigant are sufficient to "induce a capable attorney to undertake the representation of a meritorious" case. *Perdue*, 130 S. Ct. at 1672; *Millea, supra.*  As confirmed by the attached Affidavits, the hourly rates sought by plaintiff's counsel are within the range of the market rates for the relevant legal community for attorneys of comparable experience, qualifications, and expertise.  And it is important to keep in mind that "a reasonable hourly rate is not ordinarily ascertained simply by reference to rates awarded in prior cases." *Serricchio v. Wachovia Securities, LLC*, 706 F.Supp.2d 237, 253 (D.Conn. 2010).

**Time spent on the fee petition is compensable**

It is well established that the time spent on the fee request is itself compensable. In *Weisenberger v. Huecker*, 593 F.2d 49, 5354 (6th Cir. 1979), the Court stated:

> When Congress passed the Act [42 U.S.C. § 1988] its basic purpose was to encourage the private prosecution of civil rights suits through the transfer of the costs of the litigation to those who infringe upon basic civil rights.  If a successful party in a civil rights suit is awarded attorney's fees under the Act and he cannot secure attorney's fees for legal services to defend the award on appeal, the underlying Congressional purpose for the Act would be frustrated.

In *Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1987), the Court elaborated on the point in discussing the analogous fee award provisions of Title VII:

> If an attorney is required to expend time litigating his fee claim, yet may not be compensated for that time, the attorney's effective rate for all hours expended on the case will be correspondingly decreased.  Recognizing this fact, attorneys may become wary about taking Title VII cases, civil

rights cases, or other cases for which attorneys' fees are statutorily authorized.  Such a result would not comport with the purpose behind most statutory fee authorizations, viz, the encouragement of attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies.

**Lodestar Amounts**

Thus, the lodestar amount (including the additional time spent on this Motion) for the undersigned's attorney fees is 330.85 hours x $550 = $181,967.50.  The lodestar for the time spent by Attorney Scott Perry is 308.75 hours x $375 = $115,781.25.

**Circumstance Supporting Upward Adjustment of Lodestar**

In *Perdue*, the Supreme Court specified three circumstances calling for an upward enhancement of the lodestar.  The first such circumstance is applicable here:

> an enhancement may be appropriate where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during the litigation.  This may occur if the hourly rate is determined by a formula that takes into account only a single factor (such as years since admission to the bar) or perhaps only a few similar factors.  In such a case, an enhancement may be appropriate so that an attorney is compensated at the rate that the attorney would receive in cases not governed by the federal fee-shifting statutes.  But in order to provide a calculation that is objective and reviewable, the trial judge should adjust the attorney's hourly rate in accordance with specific proof linking the attorney's ability to a prevailing market rate.

*Perdue, supra*, at 1674.  Here, there is specific proof linking undersigned counsel's ability to such a prevailing market rate.

The relevant "community" of attorneys practicing whistleblower enforcement law is not geographically based.  The highest appellate court in the federal administrative law system (which handles virtually all whistleblower enforcement cases) is the

Administrative Review Board, sitting in Washington D.C.  The ARB has recognized the specialized nature of the Department of Labor's whistleblower program. See *Shields v. James E. Owen Trucking, Inc.*, ARB No. 08-072, ALJ No. 2007-STA-22 (ARB Nov. 30, 2009) (ARB notes that DOL whistleblower practice is "a narrow area of the law that is arcane to many other lawyers.").   And the nationwide nature of the whistleblower litigation practice community is confirmed by the attached Declaration of Attorney Richard Renner, Legal Director of the National Whistleblowers Center and Director of the National Whistleblowers Legal Defense Fund:

8. Mr. Goetsch has unique experience and expertise in railroad labor law. His devotion to railroad labor law long predates the 2007 enactment of the Federal Rail Safety Act (FRSA).  His creation and maintenance of the "FRSA Library" located at http://www.trainlaw.com/FRSA-library/ is the premier resource for FRSA practitioners.  Similarly, his blog at http://www/trainlawblog.com/ is an invaluable contribution to whistleblower protection law – one which no other attorney in American could make.  Mr. Goetsch's experience in this area enables him to handle efficiently cases such as Mr. Barati's which involve research into applicable railroad laws and regulations and a large amount of documents.

9. Mr. Goetsch is one of the few attorneys in the United States whose practice on behalf of whistleblowers transcends his local market and competes on a nationwide basis.  It is a sign of development for whistleblower law that a nationwide bar has developed for handling these cases.  This nationwide bar includes attorneys who practice on both complainant and respondent sides.  For attorneys who practice in this area on a national basis, the national market rates are the only rates that are reasonable for assessing the true value of the attorney's time and labor.

11. My current hourly rate for new cases to be handled before the U.S. Department of Labor is $734.00 per hour.  I have found I need to set my hourly rate at this level to provide financial resources necessary to sustain my office.  In the District of Columbia, an attorney's hourly rate for attorney fees is controlled by *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C.Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985).  The *Laffey* decision is still applied with frequency in the District of Columbia, but because over

twenty-five years have gone by since the rate was established, there are differing methods for adjusting the *Lafffey* rate based on inflation. *See Salazar v. District of Columbia*, 123 F.Supp. 2d 8 (D.D.C. 2000); *Smith v. District of Columbia*, 466 F.Supp. 2d 151 (D.D.C. 2006). The *Salazar* version of the Laffey Matrix is designed to account for this discrepancy. For lawyers such as Mr. Goetsch who practice whistleblower law on a national basis, the *Laffey-Salazar* Matrix represents the opportunity cost of their time. Mr. Goetsch could be making this rate handling any of the numerous whistleblower matters that arise in the metropolitan Washington, DC, area.

12. Both the *Laffey* and *Salazar* decisions were recently referenced by the U.S. Supreme Court as a method by courts that set a customary fee rate based on years of practice. *Perdue v. Kenny*, 130 S.Ct. 1662 (2010), footnote 6. The Supreme Court also ruled that a court can take other factors into consideration in setting a reasonable hourly fee, and that some of these factors would justify an hourly rate higher than a rate based simply on years of Bar membership. My rate is based on the Updated Laffey Matrix for an attorney with over 20 years of experience. Even at this rate, my practice has not generated a profit consistently. Instead, I must wait for sometimes years when my cases might finally be adjudicated or settled.

14. Mr. Goetsch's handling of this case for Mr. Barati has been ground-breaking and historic. It is the first time a case under the Federal Rail Safety Act has gone to a jury verdict, and the verdict here sets a most valuable precedent to accomplish the remedial purposes of the FRSA. Hopefully, news of this verdict will spread wide and far and inform managers of railroad and public transit agencies that they need to change to a safety-conscious work environment that welcomes employee reports of injuries and dangers. We will probably never know how many lives will be saved by the precedent Mr. Goetsch's skillful work has obtained here.

15. In my opinion, a fair market rate for the services of Mr. Goetsch in whistleblower protection matters would be $734 per hour. He is unique in his level of experience and expertise for railroad cases and his remarkable and outstanding experience and expertise in such cases make him a provider of top value.

The undersigned's Affidavit confirms the nationwide nature of his FRSA practice.

He is handling FRSA enforcement cases throughout the country. He is the only

attorney providing seminars on the FRSA. His FRSA Library and trainlawblog is the

leading resource on the FRSA, and attorneys and employees throughout the nation routinely turn to him for advice and for guidance.

As the ARB noted, the enforcement of whistleblower protection rights is "a narrow area of the law that is arcane" to most lawyers, and the enforcement of the FRSA rights of railroad workers is even narrower and more arcane. Speaking in his capacity as Legal Director of the National Whistleblowers Center, Attorney Renner confirms that "a nationwide bar has developed for handling these cases." He confirms that "Mr. Goetsch is one of the few attorneys in the United States whose practice on behalf of whistleblowers transcends his local market and competes on a nationwide basis." He notes that "For attorneys who practice in this area on a national basis, the national market rates are the only rates that are reasonable for assessing the true value of the attorney's time and labor." Renner Declaration at Paragraph 9.

Renner goes on to establish the prevailing market rate for attorneys who practice whistleblower law on a national basis, using the *Laffey-Salazar* Matrix referenced by the Supreme Court in *Perdue*: "For lawyers such as Mr. Goetsch who practice whistleblower law on a national basis, the *Laffey-Salazar* Matrix represents the opportunity cost of their time. Mr. Goetsch could be making this rate handling any of the numerous whistleblower matters that arise in the metropolitan Washington, DC area." *Id*. at Paragraph 11. Renner concludes that "a fair market rate for the services of Mr. Goetsch in whistleblower protection matters would be $734 per hour." *Id*. at Paragraph 15.

The undersigned respectfully submits that the enhancement circumstance recognized by *Perdue* is present here. The Renner Declaration provides "specific proof

linking the attorney's ability to a prevailing market rate."  That prevailing market rate is for an attorney with a national whistleblower protection practice, and represents the "true market value" of the undersigned, "as demonstrated in part during the litigation." *Perdue, supra,* at 1674.  Accordingly, the undersigned respectfully submits that the lodestar of $550 be enhanced by a factor of 30% to bring it more into the range of the prevailing national market rate, i.e., $550 x 30% = $715 x 330.85 hours = $236,557.75.

**Costs**

There is no dispute that under the FRSA all costs and expenses are recoverable, including costs beyond the usual Bill of Costs, such as expert fees.  The full list of costs and fees is attached, and totals $14,425.03

**Conclusion**

Accordingly, for the reasons set forth above, the plaintiff respectfully requests that the court award $236,557.75 in attorney fees for Attorney Goetsch, $115,781.25 for Attorney Perry, and $14,425.03 in costs.

Respectfully submitted,

For The Plaintiff,

BY _____

Charles C. Goetsch (ct00776)
CAHILL GOETSCH & PERRY, P.C.
43 Trumbull Street
New Haven, Connecticut  06510
Tel:  (203) 777-1000
Fax:  (203) 865-5904
charlie@trainlaw.com

13

CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2012, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Charles C. Goetsch

# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

_____X

ANDREW BARATI                              :        CIVIL ACTION

    Plaintiff                              :        NO. 3:10cv01756-JBA

VS.                                        :

METRO-NORTH RAILROAD COMPANY,              :

    Defendant                              :        April 3, 2012
_____X

## <u>AFFIDAVIT OF CHARLES C. GOETSCH</u>

I, Charles C. Goetsch, am over the age of eighteen and understand the obligations of an oath.  Being duly sworn, I hereby state the following:

1.  I am an attorney duly admitted to the practice of law in the States of Connecticut and New York and in the United States District Courts for Connecticut and the Southern District of New York.  I also am admitted to practice before the United States Court of Appeals for the Second Circuit, and the United States Supreme Court.

2.  I am a founding partner in the law firm of Cahill Goetsch & Perry. P.C., and represent the complainant Andrew Barati in the above-entitled case.

3.  In 1973 I received an A.B. degree magna cum laude and Phi Beta Kappa from Brown University in Providence, Rhode Island.

4.  In 1976 I received a J.D. from the University of Connecticut School of Law, and in 1977 I received an LL.M. from the Harvard Law School.  In 1978-1979 I was a Visiting Scholar and American Bar Foundation Fellow at the Yale Law School.

5. I served as a law clerk to U.S. District Judge Ellen Bree Burns in the District of Connecticut from 1978-1979, and as a law clerk to U.S. Circuit Court Judge Leonard P. Moore at the United States Court of Appeals for the Second Circuit from 1979-1980.

6. For the past 30 years I have practiced in the federal courts enforcing the federal statutory rights of railroad workers. My firm is one of the relatively few in the nation with that concentration and experience. I have personally tried over 55 federal jury and court trials, and handled over a dozen appeals to United States Court of Appeals. In 1997 I briefed and argued a railroad law case before the United States Supreme Court. From 1991 to 1994 I was appointed by the Chief Judge to serve as Chairman of the Civil Justice Reform Act Advisory Group for the District of Connecticut. From 1990 to 1993 I served as Chairman of the Federal Practice Section of the Connecticut Bar Association. I have lectured at several seminars on federal rules and practice, and have authored articles and books on legal subjects. I am an American Bar Association Fellow, and a long-time member of the Academy of Rail Labor Attorneys as well as other bar groups and associations.

7. The Federal Rail Safety Act is a new statute, and thus presents significant challenges regarding how to approach and resolve critical issues. I have taken a lead in the prosecution of FRSA cases, and currently handle over 50 FRSA complaints throughout the United States, including in the Northeast, Southeast, Midwest, and West Coast. I created and maintain the "FRSA Library" located at http://www.trainlaw.com/FRSA-library/ which is an online resource center for all aspects of FRSA matters and which is relied on by OSHA Whistleblower investigators and attorneys representing both railroads and employees. I gave the first seminar on the

FRSA at the May 2011 Annual Convention of the Academy of Rail Labor Attorneys, and will do it again at the upcoming April 2012 Convention. I maintain a blog at http://www.trainlawblog.com/ with over 460 subscribers where I post updates on developments in the FRSA. Attorneys and railroad employees from all over the country routinely call and email me for advice and guidance on all aspects involved in enforcing the FRSA.

8.   To my knowledge, I am the first attorney whose clients were awarded significant punitive damages by OSHA under the FRSA (total of $300,000 against Metro-North Railroad in June 2009), and the highest OSHA FRSA Award to date ($570,000 against NJ Transit Rail in April 2010). OSHA has awarded numerous Merit Findings on behalf of my clients, and I tried three of the first ALJ FRSA bench trials. I filed the first FRSA cases in United States District Court (with five currently pending). This case was the first federal jury FRSA trial in the nation, and the first FRSA award of punitive damages against a railroad.

9.   Barati is one of the first FRSA complaints brought against Metro North for violations of the FRSA (filed with OSHA in 2008), and was vigorously defended by the Railroad. It is one of the first cases in the nation to interpret and apply the scope of the FRSA's protection of railroad employees under 49 U.S.C. 20109. Pressing this case serves an important public benefit function in clarifying both for management and workers the boundaries of acceptable future conduct on the Railroad. As such, its importance transcends the amount of any economic damages involved.

10.   I am not aware of any other attorney in the nation with my level of experience and expertise handling FRSA cases, or with my nationwide FRSA practice.

My rate in the community of the District of Connecticut is $550 per hour, a rate that is appropriate given my years in practice, trial experience, and record of results.  However, that rate does not reflect the market value of my services when viewed in the context of the relevant community of attorneys enforcing whistleblower rights in a national market. See attached Declaration of the Director of the National Whistleblowers Center, Attorney Richard Renner.

11.   The detailed lists of time and labor spent by the undersigned on the preparation and prosecution of this case are attached.  The number of hours expended to date multiplied by the hourly rate totals $181,967.50, and is the applicable lodestar. However, for the reasons set forth in the accompanying Memorandum in Support, the plaintiff respectfully requests that a 30% enhancement be applied to that lodestar. The list of costs also is attached, including expert fees, and totals $14,425.03.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY.

Charles C. Goetsch [ct00776]
Cahill, Goetsch & Perry, P.C.
43 Trumbull Street
New Haven, CT 06510
Tel:  (203) 777-1000
Fax:  (203) 865-5904
Charlie@trainlaw.com


Subscribed and sworn to before me this 3rd day of April, 2012.

Karen M. Longo
Notary Public
My commission expires:  September 30, 2012

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

_____X

| | | |
|---|---|---|
| ANDREW BARATI | : | CIVIL ACTION |
| Plaintiff | : | NO. 3:10cv01756-JBA |
| VS. | : | |
| METRO-NORTH RAILROAD COMPANY, | : | |
| Defendant | : | MARCH 30, 2012 |

_____X

### AFFIDAVIT OF JOSEPH D. GARRISON

I, Joseph D. Garrison, being duly sworn, depose and say:

1.      I am a practicing attorney in New Haven, Connecticut and a partner in the law firm of Garrison, Levin-Epstein, Chimes, Richardson & Fitzgerald, P.C.

2.      I graduated from Wesleyan University in 1965 and Cornell Law School in 1968.

3.      I was the founding Chairman of the Connecticut Employment Lawyers Association, and am a past President and former member of the Board of Directors of the National Employment Lawyers Association which has over 3,200 affiliated attorneys nationally.  I was appointed a Charter Fellow of the Board of Governors of the College of Labor and Employment Lawyers, and was President of the College in 2004.  I have been named in The Best Layers in America since 1987.  I am an associate in the American Board of Trial Advocates, a Fellow in the American College of Trial Lawyers, and a member of the American Law Institute.  I have been a speaker at numerous national meetings and

seminars, including NELA and American Bar Association conventions, and am a frequent lecturer and seminar contributor in Connecticut and other states.

4.      My practice is concentrated in the area of employment law.   Our office represents employees more than 95% of the time.  Many of our cases involve statutes in which attorney's fees are awarded, so I attempt to remain current with the market for fee award purposes of attorneys in my office.

5.      I am aware of Charles C. Goetsch's litigation skills both by reputation and by serving as co-counsel in a U.S. Circuit Court of Appeals case.  He has taken, and prevailed and settled, basically all of the most difficult railroad worker cases which have been litigated in this area.

6.      I understand the trial in Barati v. Metro North Railroad Company was the first federal court jury trial in the nation under the Federal Rail Safety Act, 49 U.S.C. 20109, a new and untested statute providing whistleblower protection to railroad workers.   I understand that Mr. Goetsch not only prevailed in full on that FRSA claim, but obtained a jury award of $1 million in punitive damages.  That is four times the statutory maximum, a result that speaks for itself as to the quality and success of his representation.

7.      I understand Mr. Goetsch's current bill rate is $550 per hour.  Based on my knowledge of the market and of comparable trial attorneys, this rate is an accurate measure of Mr. Goetsch's value in the marketplace.  If he were a partner in my office, because of the substantial expertise he brings to his practice as an adjunct to mine, and because I have a few years more seniority than he, we would bill his time at a slightly lower rate than that at which I bill my own, which is $575 per hour.  Additionally, in terms of legal skills it is the rare lawyer who has been as successful as Mr. Goetsch in trying cases in his specialty, namely enforcing the federal statutory rights of railroad workers.

Joseph D. Garrison

Subscribed and sworn to before me, this 29th day of March, 2012.

Cheryl Matino

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANDREW BARATI                              :
     Plaintiff,                             :
                            :         Civil Action No. 3:10cv01756(JBA)
V.                                         :
                            :
METRO-NORTH RAILROAD COMPANY :         April 2, 2012

### AFFIDAVIT OF DAVID N. ROSEN

David N. Rosen being first duly sworn, deposes and says:

     1.     I am an attorney admitted to practice in Connecticut state and federal courts.. I received my B.A. degree from Harvard College in 1965 and my law degree from Yale Law School in 1969.   I was admitted to the Connecticut bar in1969 and to the bar of this Court in 1970. After working briefly at New Haven Legal Assistance Association, I have been in private practice since 1970, first as a sole practitioner, then for many years with Edward J. Dolan, and more recently with my current firm, David Rosen & Associates, PC.

     2.     My practice has involved many fee-shifting cases, primarily in the area of employment law. I also focus on wrongful death and personal injury cases, appeals, and, to a lesser extent, other kinds of litigation.

     3.     My usual hourly rate for cases in which I am paid by the hour is $525.

     4.     My rates are by no means out of line with those charged by comparable attorneys in the District. I recently filed an application for an award of attorney's fees in the case of *Valley Housing LLP v. City of Derby*, No. 3:06cv01319 (TLM)(HBF).  In connection with that application, I gathered information about fees charged by other attorneys in the District with experience more or less comparable to my own. Attorneys with higher hourly rates include

1

Joseph D. Garrison, David S. Golub, William H. Clendenen, Michael Koskoff, Richard Bieder, and Michael Stratton.

5.      Judge Fitzsimmons ruled on that application this past Friday. After an extended analysis, Judge Fitzsimmons fixed an hourly rate for me of $485. *See Valley Housing*, ECF No. 362.

6.      I have known Mr. Goetsch ever since he was a law clerk.  Although (unlike the Court) I have not seen him in action in the courtroom, I know him to be, along with his partner George Cahill, simply the most knowledgeable and capable attorney in the District in the area of protecting the rights of railroad workers.

7.      As in any area of complex litigation, unique expertise in this area of law is a strong justification for relatively high hourly rates. I believe that Mr. Goetsch's special expertise and experience would easily justify an hourly rate for work in this area at least equal to my own. He could in fact quite reasonably charge a somewhat higher rate.


Dated at New Haven, Connecticut this 2nd day of April, 2012.


_____

**David N. Rosen**



Subscribed and sworn to before me this 2nd day of April, 2012.


Notary Public

ANNA MARIA IRIZARRY
*NOTARY PUBLIC*
MY COMMISSION EXPIRES JUNE 30, 201_

2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

**ANDREW BARATI,**                                CASE NO. 3:10-CV-01756-JBA

                    Plaintiff,

against,

**METRO NORTH RAILROAD COMPANY,**

                    Defendant.

### DECLARATION OF RICHARD R. RENNER IN SUPPORT OF FEE APPLICATION

I, Richard R. Renner, under penalties of perjury declare that the following is true and correct:

1.   I am an attorney in private practice with the Washington, DC, offices of Kohn, Kohn & Colapinto and the National Whistleblowers Center. I have been an attorney since November 6, 1981, when I was admitted to practice before the Supreme Court of Ohio. I began my legal career working for the Southeastern Ohio Legal Services, a legal services program providing representation to eligible low income residents of Southeastern Ohio. These cases included labor law issues, and other civil matters.

2.   In 1995, my partner and I established the private law office of Tate & Renner in Dover, Ohio. One of my first cases was *Charvat v. Eastern Ohio Regional Waste Water Authority*, 96-ERA-37 (RD & O of ALJ, July 20, 1998). I filed the case with the Department of Labor in 1995. In the *Charvat* case, I was co-counsel with Michael C. Kohn, of the Washington, D.C., law office of Kohn, Kohn & Colapinto, and environmental specialist E. Dennis Muchnicki of Columbus, Ohio. The hearing in the Charvat case lasted 20 days, and resulted in a favorable

1

Recommended Decision and Order and fee award. I also represented Mr. Charvat in a civil rights action in federal District Court, which the respondent unsuccessfully appealed to the sixth Circuit in *Charvat v. Eastern Ohio Regional Waste Water Authority*, 246 F.3d 607 (6th Cir. 2001). The case settled after we prevailed in this appeal.

3.   I was sole counsel on behalf on Donna Trueblood who prevailed on multiple claims against two respondents in another Department of Labor whistleblower case known as OALJ Case Number 2002-WPC-3,4,5,6. The hearing in this matter lasted eleven days, and six attorneys appeared on behalf of the respondents. The case settled after respondents were unsuccessful in obtaining a stay of the preliminary re-instatement order. Reference Department of Labor ARB Case Numbers 03-082, 083.

4.   Since August 2008, I have resided in the Washington, DC, area and worked for the law offices of Kohn, Kohn & Colapinto here.  I have also served as Legal Director of the National Whistleblowers Center and Director of the National Whistleblowers Legal Defense and Education Fund.  My duties include development of programs to serve the needs of whistleblowers facing litigation, advising the Center on requests for legal assistance and referrals, and advising Center staff on legislative initiatives to benefit whistleblowers.  I am also still handling whistleblower cases before the Department of Labor and in federal court. With Michael Kohn, I represented Dr. Duane Bonds in *Bonds v. Leavitt*, 629 F.3d 369 (4th Cir. 2011), establishing for the first time a federal employee's right to a jury trial in mixed cases under the Whistleblower Protection Act.

5.   Since 2002, I have been secretary of the Board of the National Whistleblower Center in Washington, D.C. From March, 2006, to June, 2008, I was co-chair of the Whistleblower Committee of the National Employment Lawyers Association (NELA). In this capacity, I was a

2

member of the Program Committee for a seminar called Representing Workers in Whistleblower

and Retaliation Actions, March 16 & 17, 2007, in Chicago, Illinois. The seminar was sponsored

by the National Employment Lawyers Association, and over 100 attorneys from throughout the

country attended. I was the lead presenter in the first workshop, introducing practice before the

Department of Labor. I also participated in the ethics panel. I presented papers for both panels,

including a paper on conflicts of interest. I authored an article on Federal Environmental

Whislteblower Complaints for Employee Rights Quarterly, Volume III, Summer 2002. I am the

author of the Workplace Fairness webpages on the rights of environmental whistleblowers,

corporate whistleblowers, union activists, airline employees, and the First Amendment rights of

public employees. I presented a paper and presentation on Sarbanes Oxely and other Federal

Whistleblower Protections to the Ohio Employment Lawyers Association in 2004. I presented a

paper and presentation on the Consumer Product Safety Improvement Act of 2008 in November,

2008, in Washington, DC. I presented a paper on maintaining ethics during conflict to the

national convention of NELA in 2010.

   6.    On behalf of the National Whistleblowers Center, I submitted comments to the

Department of Labor on its regulations for handling whistleblower cases under the Federal Rail

Safety Act (FRSA), 49 U.S.C. § 20109, and the National Transit System Security Act (NTSSA),

6 U.S.C. § 1142 (29 CFR Part 1982), the Consumer Product Safety Improvement Act (CPSIA),

15 U.S.C. § 2087 (29 CFR Part 1983), the Surface Transportation Assistance Act (STAA) (29

CFR Part 1978), and the Sarbanes-Oxley Act,18 U.S.C. § 1514A (29 C.F.R. Part 1980).  In 2007,

with attorney Jason Zuckerman, I submitted comments on revisions to 29 C.F.R. Part 24

covering environmental whistleblower procedures.

   7.    I have submitted amicus briefs in *Lucas v. Duncan*. 574 F.3d 772 (D.C.Cir. 2009),

*Stone v. Instrumentation Laboratory Co.*, 591 F.3d 239 (4th Cir. 12-31-2009), *Schroeder v.*

*Greater New Orleans Federal Credit Union*, 664 F.3d 1016 (5th Cir. 2011) (with Stephen Kohn),

and *Sylvester v. Parexel Int'l LLC*, ARB No. 07-123, 2011 WL 2165854 (en banc)(also with

Stephen Kohn).

8.   Mr. Goetsch has unique experience and expertise in railroad labor law.  His devotion

to railroad labor law long predates the 2007 enactment of the Federal Rail Safety Act (FRSA).

His creation and maintenance of the "FRSA Library" located at http://www.trainlaw.com/FRSA-

library/ is the premiere resource for FRSA practioners. Similarly, his blog at

http://www.trainlawblog.com/ is an invaluable contribution to whistleblower protection law –

one which no other attorney in America could make. Mr. Goetsch's experience in this area

enables him to handle efficiently cases such as Mr. Barati's which involve research into

applicable railroad laws and regulations and a large amount of documents.

9.   Mr. Goetsch is one of the few attorneys in the United States whose practice on behalf

of whistleblowers transcends his local market and competes on a nationwide basis. It is a sign of

development for whistleblower law that a nationwide bar has developed for handling these cases.

This nationwide bar includes attorneys who practice on both complainant and respondent sides.

For attorneys who practice in this area on a national basis, the national market rates are the only

rates that are reasonable for assessing the true value of the attorney's time and labor.

10.   Representation of whistleblowers carries inherent risks. Even in cases where counsel

can identify the appropriate cause of action before the short time limit for filing, counsel bares a

risk that the OSHA investigation will be ineffective, protracted, or in rare cases, hostile to the

complainant. In some cases, the experience will be more stressful than the complainant is able to

handle. Especially in those cases where respondent makes a meager settlement offer, counsel

may be compelled by the client to accept such an offer which does not provide a reasonable compensation for complainant's counsel. Counsel also bears a small risk that OSHA staff may mishandle delivery of the determination so that counsel does not receive it until after expiration of the time to file objections and a request for a hearing to the Office of Administrative Law Judges. Counsel bears a risk on the assignment of the case to one of the various Administrative Law Judges who have different records in ruling on behalf of complainants. Counsel has to make a difficult judgment call about whether to exercise the option to file in U.S. District Court or stay in the Department of Labor and risk a substantial delay during processing by the Administrative Review Board. Unfavorable decisions are a risk with either path. Even if a favorable decision is adopted by the Administrative Review Board or entered by the District Court, counsel bears a risk that respondent will appeal or otherwise resist enforcement. Finally, counsel bears a risk that after years of litigation, the respondent might not be collectible. Prudent counsel who wish to survive in a practice on behalf of whistleblowers need to consider these risks in setting their regular hourly rate for handling these matters.

11.  My current hourly rate for new cases to be handled before the U.S. Department of Labor is $734.00 per hour. I have found I need to set my hourly rate at this level to provide financial resources necessary to sustain my office. In the District of Columbia, an attorney's hourly rate for attorney fees is controlled by *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985). The *Laffey* decision is still applied with frequency in the District of Columbia, but because over twenty-five years have gone by since the rate was established, there are differing methods for adjusting the *Laffey* rate based on inflation.  *See Salazar v. District of Columbia*, 123 F.Supp. 2d 8 (D.D.C. 2000); *Smith v. District of Columbia*, 466

F.Supp.2d 151 (D.D.C. 2006).   The *Salazar* version of the Laffey Matrix is designed to account for this discrepancy. For lawyers such as Mr. Goetsch who practice whistleblower law on a national basis, the *Laffey-Salazar* Matrix represents the opportunity cost of their time. Mr. Goetsch could be making this rate handling any of the numerous whistleblower matters that arise in the metropolitan Washington, DC, area.

12.   Both the *Laffey* and *Salazar* decisions were recently referenced by the U.S. Supreme Court as a method by courts that set a customary fee rate based on years of practice. *Perdue v. Kenny*, 130 S.Ct. 1662 (2010), footnote 6.  The Supreme Court also ruled that a court can take other factors into consideration in setting a reasonable hourly fee, and that some of these factors would justify an hourly rate higher than a rate based simply on years of Bar membership. My rate is based on the Updated Laffey Matrix for an attorney with over 20 years of experience. Even at this rate, my practice has not generated a profit consistently. Instead, I must wait for sometimes years when my cases might finally be adjudicated or settled.

13.   According to my firm's web site,1 we currently charge paying clients at the *Laffey* rate, as adjusted for inflation under the method used in the *Salazar* decision.  We charge the following hourly rates for paying clients:

| | |
|---|---|
| Law Clerks: | $166 |
| Attorneys with 1-3 years experience: | $305 |
| Attorneys with 4-7 years experience: | $374 |
| Attorneys with 8-10 years experience: | $540 |
| Attorneys with 11-19 years experience: | $609 |
| Attorneys with 20+ years experience: | $734 |

---

1  http://www.kkc.com/the-firm/standard-billing-rates

14. Mr. Goetsch's handling of this case for Mr. Barati has been ground-breaking and historic. It is the first time a case under the Federal Rail Safety Act has gone to a jury verdict, and the verdict here sets a most valuable precedent to accomplish the remedial purposes of the FRSA. Hopefully, news of this verdict will spread wide and far and inform managers of railroads and public transit agencies that they need to change to a safety-conscious work environment that welcomes employee reports of injuries and dangers. Will will probably never know how many lives will be saved by the precedent Mr. Goetsch's skillful work has obtained here.

15.  In my opinion, a fair market rate for the services of Mr. Goetsch in whistleblower protection matters would be $734 per hour. He is unique in his level of experience and expertise for railroad cases and his remarkable and outstanding experience and expertise in such cases makes him a provider of top value.

I declare under penalty of law that the foregoing is true and correct.

Dated this _29th_ day of March, 2012.


Richard R. Renner
Kohn, Kohn & Colapinto, LLP
3233 P St. NW
Washington, DC  20007
(202) 342-6980, Ext. 112
(202) 342-6984 fax
rr@kkc.com

7

## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

_____X

ANDREW BARATI                              :        CIVIL ACTION

    Plaintiff                            :        NO. 3:10cv01756-JBA

VS.                                        :

METRO-NORTH RAILROAD COMPANY,              :

    Defendant                            :        April 3, 2012
_____X

### AFFIDAVIT OF SCOTT E. PERRY

    I, Scott E. Perry, am over the age of eighteen and understand the obligations of an oath.  Being duly sworn, I hereby state the following:

    1.   I am an attorney duly admitted to the practice of law in the States of Connecticut and New York and in the United States District Courts for Connecticut, the Southern District of New York, and the Eastern District of New York.

    2.  I am a partner in the law firm of Cahill Goetsch & Perry. P.C., and represent the complainant Andrew Barati in the above-entitled case.

    3.  In 1992 I received a B.A. degree in political science from Brown University in Providence, Rhode Island.

    4.  In 1995 I received a J.D. from the University of Connecticut School of Law.

    5.  I served as a law clerk to U.S. District Court Judge T.F. Gilroy Daly in the District of Connecticut from the fall of 2005 until the summer of 2006.

    6.   For the past 12 years I have practiced in the federal courts enforcing the federal statutory rights of railroad workers.   My firm is one of the very few in the

Northeast with that concentration and experience.  I have tried federal cases before juries and to the Court.  From 2006 through 2009, I was an associate at Robinson & Cole LLP in the litigation practice group.

7.   The FRSA is a new statute, and thus presents significant challenges regarding how to approach and resolve critical issues.  I currently handle about seven FRSA complaints throughout the Northeast.

8.   My current rate is $375 per hour, a rate that is appropriate given my previous experience and skills.

9.   The detailed lists of time and labor spent on the preparation and prosecution of this case are attached.  The number of hours expended to date multiplied by the hourly rate totals $115,781.25, and is my attorney's fee applicable to the work performed on this case to date.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY.

_____
Scott E. Perry [ct17236]]
Cahill, Goetsch & Perry, P.C.
43 Trumbull Street
New Haven, CT 06510
Tel: (203) 777-1000
Fax: (2030 865-5904
scott@trainlaw.com

Subscribed and sworn to before me this 3rd day of April, 2012.

_____
Karen M. Longo
Notary Public / My commission expires:  9/30/12

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
_____ X
ANDREW BARATI                    :      CIVIL ACTION NO.:

        Plaintiff               :      3:10cv01756-JBA

VS.                              :

METRO-NORTH RAILROAD COMPANY, :

        Defendant               :      April 3, 2012
_____ X
```

## <u>AFFIDAVIT OF ROBERT RICHARDSON</u>

I, **Robert Richardson**, am over the age of eighteen and understand the obligations of an oath. Being duly sworn, I hereby state the following:

1.      I am an attorney duly admitted to the practice of law in the State of Connecticut, the United States District Court for the District of Connecticut and the Second Circuit Court of Appeals.

2.      I have been admitted to practice law in the State of Connecticut since 1991, and I am a partner in the firm of Garrison, Levin-Epstein, Chimes, Richardson & Fitzgerald, P.C. in New Haven, Connecticut.

3.      For the past 20 years I have concentrated on representing plaintiffs in the field of employment related law.  I have written and lectured on issues pertaining to such employment law, and have tried numerous cases before juries and courts.

4.      In 2008 and 2009, my regular hourly rate for all clients was $375 per hour.  In 2010, my rate increased to $390 per hour and remained there throughout 2011.  In February, 2012, my rate increased to $425 per hour.  Based on my knowledge of attorney fee awards in this District, that rate is consistent with other attorneys who possess a similar level of experience and expertise.

5.      I am familiar with Attorney Perry's background and experience and if he were a member of my firm, his hourly rate based on his background and experience would be between $350 and $400 per hour.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY.

_____

Robert A. Richardson

STATE OF CONNECTICUT)
                                        SS:
COUNTY OF NEW HAVEN)

Subscribed and sworn to before me this ___3rd___ day of _____April_____, 2012.

_____

Notary Public (Christine McGuire)

My Commission Expires: ___11/30/2015___

2