UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANDREW BARATI,<br>  *Plaintiff*,<br>   *v.*<br>METRO–NORTH RAILROAD COMPANY,<br>  *Defendant*. | Civil No. 3:10cv1756 (JBA)<br><br><br>March 27, 2013 |

**RULING ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

Following a six–day trial, the jury returned a verdict in Plaintiff Andrew Barati's favor on his claims under the Federal Rail Safety Act, 49 U.S.C. § 20109 ("FRSA"), and the Federal Employer Liability Act, 45 U.S.C. § 51 ("FELA") against Defendant Metro–North Railroad Company ("Metro–North"). Judgment in the amount of $20,000 on Plaintiff's FELA claim, $41,778 on Plaintiff's FRSA claim, and $250,000 in punitive damages has been entered. (*See* Am. Judgment [Doc. # 152].) Plaintiff moves [Doc. # 130] for an award of attorneys' fees and costs, as a prevailing party under the FRSA. *See* 49 U.S.C. § 20109(e). For the reasons that follow, Plaintiff's is awarded $273,536.25 in attorneys' fees, and $14,425.03 in costs.

**I. Discussion**

Both the Second Circuit and the Supreme Court "have held that the lodestar—the product of a reasonable rate and the reasonable number of hours required by the case—creates a presumptively reasonable fee." *Millea v. Metro–North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany*, 522 F.3d 182 (2d Cir. 2008); *Perdue v. Kenny A. ex. rel. Winn*, 130 S.Ct. 1662 (2010)). "[A] 'reasonable' fee is one that is sufficient to induce a capable attorney to undertake the representation of a meritorious [] case." *Perdue*, 130 S.Ct. at 1667. "There

is a 'strong' presumption that the lodestar method yields a sufficient fee," *id.*, but "[a] district court may adjust the lodestar when it does not adequately take into account a factor that may properly be considered in determining a reasonable fee," *Millea*, 658 F.3d at 167 (internal citations and quotation marks omitted).  For example, "an enhancement may be appropriate where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during the litigation."  *Purdue*, 130 S.Ct. at 1674.  However, "an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation."  *Id.* at 1673.  The burden of proving that an enhancement is necessary must be borne by the fee applicant."  *Id.*

A.      **Reasonableness of Rate**

Plaintiff seeks fees at rates of $550 per hour for Attorney Charles Goetsch and $375 for Attorney Scott Perry.   Defendant argues that Attorney Goetsch's rate of $550 per hour should be reduced because it is above the highest rates approved in this district, and that consequently, Attorney Perry's rate, as the second chair in this case, should be similarly reduced.  "[T]he lodestar looks to the prevailing market rates in the relevant community."  *Perdue*, 130 S.Ct. at 1672.  In support of his fee application, Plaintiff submits affidavits from Attorney Joseph Garrison, Attorney David Rosen, and Attorney Robert Richardson stating that billing rates of $550 for Attorney Goetsch and $375 for Attorney Perry represent reasonable rates for attorneys in this District with their respective experience and expertise.  (*See* Attachments to Pl.'s Mem. in Supp. [Doc. # 131].)  Attorney Richardson states that an attorney at his firm with experience similar to Attorney Perry would bill at between $350 and $400 per hour.  (*See id.*)   Attorney Garrison states that he currently bills at a rate of $575 per hour, and that given Attorney

Goetsch's level of experience, he would likely bill at slightly less than that as a member of Attorney Garrison's firm.  (*See id.*)  Attorney Rosen states that he bills at $525 per hour, and points to a 2012 opinion in this District, *see Valley Housing Ltd. P'ship v. City of Derby*, No. 3:06CV1319 (TLM), 2012 WL 1077848, at *5 (D. Conn. Mar. 30, 2012), awarding him a fee of $485 per hour in support of this billing rate.  (*See id.*)  It appears that the highest fee ever awarded in this District was on an unopposed application for a rate of $500 for an attorney with substantial litigation experience in connection with an unopposed fee application.  *See Muhammed v. Martoccio*, No. 3:06-cv-1137, 2010 WL 3718560, at *3–4 (D. Conn. Sept. 13, 2010).

Defendant cites to *Serricchio v. Wachovia Securities, LLC*, 706 F. Supp. 2d 237 (D. Conn. 2010) to argue that Plaintiff's fee should be reduced.  In *Serricchio*, this Court reduced a requested hourly rate of $550 to $465.  At the time, $465 per hour represented the highest fee awarded in the district by $65 per hour, and was based on the attorney's "extensive experience, high reputation, and remarkably successful results."  *Id.* at 255. However, more than two years have elapsed since *Serricchio* was decided.  As described in the affidavit of Attorney Richard Renner (*see* Attachments to Pl.'s Mem. Supp.), Attorney Goetsch is undeniably a leading specialist in the law governing railroad employees' rights, and his longstanding and highly developed practice makes him more efficient, creative, and effective for his railroad employee clients than an attorney of similar trial experience in federal litigation but without the benefits of his specialization.  Based on Attorney Goetsch's experience, his success in this unique case, and the case law since *Serricchio* evidencing a rise in the prevailing market rate, the Court finds that an hourly rate of $525 for his work on this case is reasonable and fulfills the purpose of federal fee shifting statutes to incentivize capable attorneys to take on meritorious cases under the FRSA.

3

Similarly, based on Attorney Perry's twelve years of litigation experience and federal clerkship, the Court finds that an hourly rate of $375 for his work on this case is reasonable. *See Serricchio*, 706 F. Supp. 2d at 255–56 (awarding rate of $410 per hour to partner with nineteen years of experience and $300 per hour to associate with five years of experience and a federal clerkship).

### B.    Reasonableness of Time Expended

Plaintiff seeks fees for 345.65 hours[1] of work performed by Attorney Goetsch and for 311.75[2] hours of work performed by Attorney Perry.  Defendant's objections to the amount of time expended in connection with this action fall generally into three categories:  (1) Defendant objects to vague and duplicative time entries by Attorney Perry, (2) Defendant objects to the fees sought in connection with Plaintiff's expert witness; and (3) Defendant objects to time spent pursuing Plaintiff's FELA claim, which is a non–fee–shifting claim.[3]

---

[1] This amount represents the 330.85 hours Plaintiff sought in his original petition and an additional 14.8 hours sought in connection with the preparation of Plaintiff's reply to Defendant's objection to this petition.

[2] In his reply, Plaintiff agreed that Attorney Perry's hours should be reduced from 308.75 to 296.75, and thus this amount represents the 296.75 Plaintiff seeks in connection with his original petition, an additional 9.75 hours sought in connection with the preparation of Plaintiff's reply to Defendant's objection to this petition, and an additional 5.25 hours sought in connection with the preparation of a subpoena for Defendant's billing records.

[3] Defendant also submitted several objections, described as "miscellaneous," without citing specific case law in support of these reductions.  Plaintiff agreed that several of these reductions were proper, but to the extent that there remains a request for additional "miscellaneous" reductions, the Court is unpersuaded by Defendant's arguments.

1.      *Attorney Perry's Hours*

Defendant claims that some of Attorney Perry's time entries were excessive and duplicative of work performed by Attorney Goetsch.  To the extent that Defendant objects to Attorney Perry's attendance at the pre–trial conference, the Court requires that the attorneys who will try the case appear at the final pretrial conference.  (*See* Trial Preferences,   http://www.ctd.uscourts.gov/sites/default/files/forms/Trial%20Preferences. pdf.) Furthermore, it is not unreasonable that two attorneys would be required to try a first-of-its–kind case, and a second chair can add value to the presentation of a case in taking notes, handling unanticipated exhibit needs, and reviewing testimony to inform and enhance the primary counsel's examination of witnesses and preparation of an effective closing argument.  Therefore, the Court does not find that Attorney Perry's time entries for the pre–trial conference and the trial were duplicative.  Defendant also objects that Attorney Perry's work on the Joint Trial Memorandum and the bench memo on the admissibility of agency reports was duplicative of work performed by Attorney Goetsch. It is not unreasonable that Attorneys Goetsch and Perry would approach brief writing as a collaborative process and two attorneys can work on separate sections of a brief without necessarily duplicating work.  However, Attorney Perry spent thirty–two hours drafting the joint trial memo, which the Court finds to be excessive.  Thus, the court will reduce this figure by fifty percent, and subtract a total of sixteen hours from Attorney Perry's fee request.

Defendant also objects to several of Attorney Perry's entries on the basis that they are vague block entries.  "Block billing"—i.e., billing a large number of hours for multiple tasks—does not permit the Court to determine actual time spent on particular tasks, nor whether two lawyers are duplicating each other. *See Green v. City of New York,* 403 F.

5

App'x 626, 630 (2d Cir. 2010) (affirming district court's application of hours reduction due to pervasive block billing in time entries submitted by counsel and concluding that the practice raised questions regarding the reasonableness of the entries). For example, Attorney Perry's entry from September 22, 2011 which states "review file to prepare for deposition; OC with George Gavalla" (*see* Ex. 1 to Pl.'s Mem. Supp.) is overly vague and does not parse out the duration of each task.  Moreover, several of his entries utilize the term "review file," a phrase which "do[es] not provide an adequate basis upon which to evaluate the reasonableness of the services and hours expended on a given matter."  *See Valley Housing*, 2012 WL 1077848, at *8.  Thus, the Court will exclude Attorney Perry's entries from September 6, 2011, September 15, 2011, and September 22, 2011 as vague, for a total reduction of 17.7 hours.  Furthermore, the Court will impose a ten–percent reduction to all of Attorney Perry's hours in light of his use of block billing.  *See id.* (imposing an across–the–board reduction in light of counsel's use of vague block entries).[4]

Accordingly, Attorney Perry's hours will be reduced to 245.52 hours. [5]

---

[4] In response to Defendant's objection to this fee petition, relying on *Serricchio*, Plaintiff subpoenaed defense counsel's billing records.  Defendant moves [Doc. # 141] to quash the subpoena.  Here, unlike *Serricchio*, Defendant raised detailed objections to specific billing entries based on well–established law in this Circuit.  Thus, the Court concludes that defense counsel's billing records are not necessary to rule on Defendant's objections, and Defendant's motion to quash is granted.  The Court will exclude the 5.25 hours Attorney Perry seeks to recover for the time spent drafting a response to the motion to quash.

[5] This figure represents the following calculations:  A total of 38.95 hours are subtracted from the original request of 311.75 hours for excessive billing on the joint trial memo, vague time entries, and time spent on the motion to quash, resulting in a total 272.8 hours.  This figure is further reduced by ten percent (or 27.28 hours) as a result of Attorney Perry's use of vague, block entries, resulting in a final total of 245.52 hours.

2.     *Expert Witness Fees and Costs*

Defendant argues that because the Court ultimately limited the scope of the testimony by Plaintiff's expert witness George Gavalla, the time spent preparing this witness's testimony and expert report, and Plaintiff's claim for expert witness costs should be substantially reduced.   However, Defendant cites no case law in support of the proposition that a court should apportion fees related to an expert witness based on the scope of his or her testimony, and offers no principled method by which the Court could apportion these costs and fees between the excluded testimony and the admitted testimony.   Furthermore, the language of the FRSA does not limit the recovery of expert witness fees in any way.  *See* 49 U.S.C. § 20109(e)(2)(C) ("[R]elief . . . shall include . . . compensatory damages, including compensation for any special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, and reasonable attorney fees.")  Even in light of the Court's decision to limit the scope of his testimony, Mr. Gavalla's testimony at trial was crucial to Plaintiff's case.  Therefore, the Court will not limit the attorneys' fees or witness costs associated with Mr. Gavalla.

3.     *FELA Claim*

Finally, Defendant argues that Plaintiff may not recover for any fees incurred in relation to his FELA claim because the FELA is not a fee–shifting statute.  "When calculating a lodestar, the number of hours spent on a case should include only those hours spent on claims eligible for fee–shifting."  *Millea*, 658 F.3d at 168.  "Hours spent solely on . . . statutory claims not subject to fee–shifting must be excluded to reflect the default rule that each party must pay its own attorney's fees and expenses."  *Id.* (internal quotation marks omitted).  However, "[h]ours spent on legal work that furthers both fee–shifting and non–fee–shifting claims may be included in the lodestar calculation because

7

they would have been expended even if the plaintiff had not included non–fee–shifting claims in his complaint." *Id.* at 168 n.4.  Here Plaintiff's FELA and FRSA claims were inextricably intertwined in that they both relied on the same core facts relating to the circumstances of Plaintiff's injury and Defendant's response to that injury.  Defendant does not identify any exhibit or witness at trial that is attributable solely to Plaintiff's FELA claim other than the testimony of John Ella.  However, Mr. Ella's testimony helped establish one of the elements of Plaintiff's FRSA claim—that Defendant knew Plaintiff's injury was "work related."  Given that both claims depended on the same evidence at trial, the Court finds that all of the fees incurred in this matter would necessarily have furthered Plaintiff's FRSA claims, and thus the Court will not apportion the requested fees between the FELA and FRSA claims.

### C.    Presumptively Reasonable Fee

Taking into account the Court's adjustment of hours reasonably expended, the Court calculates the presumptively reasonable fee via the lodestar method as follows:

|  | Attorney | Reasonable Fee | Hours Requested | Reasonable Hours Awarded | Fee Awarded |
|---|---|---|---|---|---|
|  | Goetsch | $525 | 345.65 | 345.65 | $181,466.25 |
|  | Perry | $375 | 311.75 | 245.52 | $92,070.00 |
| **Total** |  |  |  |  | $273,536.25 |

### D.    Final Fee Award

Plaintiff argues that given the novelty of the FRSA and his nationally recognized specialization in train law, this case represents the rare circumstance where a rate enhancement is warranted, and requests that the lodestar amount be adjusted upward via an enhancement of Attorney Goetsch's hourly rate by thirty percent to $715 per hour.  In *Perdue*, the Supreme Court recognized that enhancement may be proper "where the

8

method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value." 130 S.Ct. at 1674.  In such a case, "the trial judge should adjust the attorney's hourly rate in accordance with specific proof linking the attorney's ability to a prevailing market rate." *Id.*  As evidence linking Attorney Goetsch to this enhanced rate, Plaintiff offers the affidavit of Attorney Renner, which states that Attorney Goetsch's practice "transcends his local market and competes on a nationwide basis." (*See* Attachments to Pl.'s Mem. Supp.)  To the extent that this argument is based on the novelty and complexity of the FRSA, and Attorney Goetsch's exceptional performance in being the first attorney to try a FRSA case to a successful verdict, the Supreme Court has rejected these factors as justification for an enhancement because they are already subsumed in the lodestar calculation.  *See Purdue*, 130 S.Ct. at 1673.  Furthermore, as this Court reasoned in *Serricchio*, because this was the first FRSA case, "a savvy client would recognize potential leverage to negotiate a lower fee from the reputational benefits that would accrue to [Attorney Goetsch] for taking on this representation." 706 F. Supp. 2d at 255.  While Attorney Goetsch has already attracted a large railroad employee client base, his victory in this case provides the potential for broader referrals beyond his current client list and their geographical distribution, and enhances his gravitas in settlement negotiations.  The Court has already considered Attorney Goetsch's considerable experience and reputation, in addition to his success in this case, in setting a reasonable hourly fee as high as it did as a part of the lodestar calculation.  Therefore the Court concludes that no further enhancement of this rate is warranted.

With the adjustments made as to the reasonableness of hours expended, the Court does not find that any other appropriate adjustments are warranted.  Accordingly, the

Court awards Plaintiff an attorney fee of $273,536.25, and costs in the amount of $14,425.03.

**II.      Conclusion**

For the reasons discussed above, Plaintiff's motion [Doc. # 130] for costs and fees is GRANTED in part.  Defendant's Motion [Doc. # 141] to Quash is GRANTED.  The Court awards $273,536.25 in attorneys' fees and $14,425.03 in costs, for a total of $287,961.28, and directs that the Judgment be amended accordingly.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 27th day of March, 2013.